**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 06-11364 (BLS) |
| GORDON G. HENDRY, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| ——————————————————— | ) | |
| MARIE S. HENDRY, | ) | |
| Administratrix of the | ) | |
| Estate of David J. Hendry, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. No.  08-51871 (BLS) |
| | ) | |
| GORDON G. HENDRY, | ) | |
| | ) | |
| Defendant. | ) | Re: Docket No. 15 |

Jason C. Powell                    Erin K. Brignola
Ferry, Joseph & Pearce, P.A.       Cooper Levenson April
824 N. Market Street               Niedelman & Wagenheim, P.A.
Suite 904                          30 Fox Hunt Drive
P.O. Box 1351                      Fox Run Shopping Center
Wilmington, DE 19899               Bear, DE 19701

*Counsel for Plaintiff,*            *Counsel for Defendant,*
*Marie S. Hendry*                   *Gordon G. Hendry*


OPINION[1]

     Before the Court is the Motion for Summary Judgment (the

"Motion")[Docket No. 15] filed by Marie S. Hendry ("Plaintiff"),

as administratrix of the estate of David J. Hendry.  The Motion

is objected to by the debtor/defendant, Gordon G. Hendry

---

     [1]     "The court is not required to state findings or
conclusions when ruling on a motion under Rule 12 or 56 . . .
." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein
makes no findings of fact and conclusions of law pursuant to
Rule 7052 of the Federal Rules of Bankruptcy Procedure.

("Debtor").  For the following reasons, the Court will grant the Motion.

## I.  BACKGROUND

The parties hereto have been engaged in litigation in federal and state courts regarding interests in a parcel of real property known as Dave's Shopping Center (the "Property") since 1991 when the Debtor's father, David J. Hendry ("D. Hendry"), filed a lawsuit (the "First Chancery Action") against the Debtor in the Delaware Court of Chancery.  By the First Chancery Action, D. Hendry challenged the validity of a deed to the Property that he had allegedly executed in 1985.  The disputed deed purported to convey the Property to himself and the Debtor. On or about March 24, 1994, the parties orally agreed to settle the First Chancery Action through a division of the Property (the "Settlement"), whereby D. Hendry received the income-producing developed portion of the Property and the Debtor received the remaining non-income-producing undeveloped portion. Although it is undisputed that this arrangement was the basis of the Settlement, the parties never signed a written version of the Settlement prior to D. Hendry's death on March 25, 1996.

D. Hendry's will provides that, following payment of the debts of his estate (the "Estate"), title to the Property is to vest in a designated trust (the "Trust").  Plaintiff is a co-

trustee and beneficiary of the Trust and the administratrix and
a beneficiary of the Estate. The Debtor is expressly not a
beneficiary of the Trust and D. Hendry explicitly indicated in
his will that "I have not made provisions in this will for my
son, Gordon G. Hendry, nor for any of his issue for reasons best
known to him and me." Def.'s Br. Ex. A-3 at 2.

Following disagreements between Plaintiff and the Debtor
regarding the Settlement, Plaintiff moved in 1997 for an order
enforcing the Settlement within the First Chancery Action.  On
June 3, 1998, the Chancery Court issued a memorandum opinion
(the "First Chancery Decision") determining that the Settlement
was enforceable and that the parties should divide the Property
so that Plaintiff received the income-producing developed
portion.  The Debtor appealed, and on December 27, 1999, the
Delaware Supreme Court summarily affirmed the First Chancery
Decision.  Hendry v. Hendry, 746 A.2d 276 (Del. 1999).

After the First Chancery Decision was affirmed, on or about
December 13, 2000, the Debtor purchased the mortgage and note on
the Property (the "Mortgage") from PNC Bank.  Pl.'s Br. 14.
Following D. Hendry's death, the Estate no longer received
rental income from the Property and was unable to make payments
on the Mortgage.  Thereafter, the Debtor, as holder of the
Mortgage, threatened default against the Estate. Pl.'s Reply Br.
15.

Following such threats, in 2001, Plaintiff initiated a second action in Chancery Court (the "Second Chancery Action") therein asserting misappropriation of funds, tortious interference with contract and unjust enrichment. Contemporaneously with the filing of the Second Chancery Action, the Debtor moved for enforcement of the First Chancery Court Decision seeking partition of the Property. The Debtor agreed to suspend foreclosure efforts related to the Mortgage during the course of the Second Chancery Action. Pl.'s Br. 14.

On May 26, 2006, the Chancery Court addressed the Debtor's enforcement motion and certain summary judgment motions in the Second Chancery Action in a combined memorandum opinion (the "Second Chancery Decision"). Hendry v. Hendry, 2006 WL 1565254 (Del. Ch. 2006). In the Second Chancery Decision, the Chancery Court interpreted and enforced the First Chancery Opinion and granted Plaintiff partial summary judgment finding that the Debtor did not retain any interest in the Property following the Settlement.[2] 2006 WL 1565254 at *1.

The Second Chancery Decision specifically addressed the Debtor's interest in a lease (the "Lease") of the Property by and among (i) the Debtor and D. Hendry, on the one hand; and (ii) a partnership operating as Dave's Shopping Center (the

---

[2]    The Chancery Court also found, in the alternative, that *res judicata* barred the Debtor from asserting any remaining interest in the Property following the First Chancery Action.

4

"Partnership"), on the other hand.  Id. at *3.  The Partnership consisted of the Debtor, D. Hendry and the Debtor's late son. Id.  The Lease provided that, among other things, the Partnership would act as lessor to rent the property.  Id. Following the death of the Debtor's son in 1989, the Partnership dissolved as a matter of law and the Debtor and D. Hendry became joint owners as tenants in common of the Partnership's assets, namely the Lease.  Id. at *4.  In the Second Chancery Action, the Debtor argued that he was entitled to rents from the Property due to the Partnership's interest in the Lease.  Id. at *7.

The Chancery Court disagreed and found that the First Chancery Court Decision and its related order contemplated the transfer of all right, title, and interest in the income producing parcel to the Estate, including all rights related to the Lease.  Id. at *6-7 (finding that when the Debtor agreed to the Settlement, he "implicitly relinquished any leasehold interest he may have had in the [Lease].").

Following entry of the Second Chancery Decision, the parties filed cross-motions for summary judgment on the remaining issues and oral argument was held.  Before the Chancery Court could issue a ruling, the Debtor filed a voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code on November 30, 2006 (the "Petition Date").

Following the Petition Date, Plaintiff filed two claims
related to rents on the Property in the Debtor's bankruptcy
case.  Eventually, the parties litigated the claims in an
adversary proceeding (the "First Adversary") before Bankruptcy
Judge Judith K. Fitzgerald.  The First Adversary, like the
Chancery Court actions, was hotly contested and both parties
filed summary judgment motions.  At a hearing on January 29,
2008 (the "2008 Hearing"), Judge Fitzgerald held oral argument
on the motions and found that the Debtor "is liable for return
of the rents."  Adv. Hr'g Tr. 44, Jan. 29, 2008.  In so finding,
the Court noted that the Settlement was "a very clear agreement
and from that day on I see -- I simply do not see how [the
Debtor] can credibly claim that there was any doubt in his mind
that he had any interest left in the rents."  Adv. Hr'g Tr. 43.

The Court also determined that Plaintiff's allowed claim
against the Debtor for rents on the Property should be offset
with respect to the Mortgage, but not otherwise reduced.  Adv.
Hr'g Tr. 45-47.  Specifically, the Court rejected the Debtor's
request for offset of the Debtor's alleged property management
expenses because of the Debtor's failure to provide
documentation of his expenses. Adv. Hr'g Tr. 46.

The Court also awarded Plaintiff interest running from the
date the order related to the Second Chancery Opinion was
entered. Adv. Hr'g Tr. 47.  In so holding, the Court noted that

"[the Debtor] had no right to those funds . . . despite having no right to the funds, he took the money . . .  He had the ability to use it and to do with it whatever he chose. Therefore, interest on those funds should have inured to the benefit of [Plaintiff] . . . ." Adv. Hr'g Tr 48.

Although the issue of dischargeability was not before the Court at the 2008 Hearing, the Court noted that, "[t]his action, I believe, qualifies as a non-dischargeable debt on Mr. Gordon Hendry's behalf."  Adv. Hr'g Tr. 51.  Following the 2008 Hearing, the Court entered an Order (the "2008 Order") [Adv. Pro. 07-51687, Docket No. 40] allowing Plaintiff a claim against the Debtor in the amount of $575,054.78 ("Claim 8").  The 2008 Order also deemed the Mortgage paid in full and dismissed the remainder of the First Adversary with prejudice.

On August 26, 2008, the Debtor converted his case to one under Chapter 7 of the Bankruptcy Code.  Several months thereafter, Plaintiff initiated this adversary proceeding by filing a complaint (as amended, the "Complaint") [Docket No. 1] alleging that Claim 8 is non-dischargeable pursuant to section 523 of the Bankruptcy Code.

## II.  JURISIDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of

this Motion constitutes a core proceeding under 28 U.S.C. §

157(b)(2)(A), (I), and (J).

### III.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure, made

applicable by Rule 7056 of the Federal Rules of Bankruptcy

Procedure provides that the Court may grant summary judgment "if

the pleadings, the discovery and disclosure materials on file,

and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 7056(c)(2).  An issue of

material fact is genuine only if the evidence is such that a

reasonable jury could find for the non-moving party.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  On summary

judgment, the facts must be viewed in the light most favorable

to the non-moving party. Id.

The party moving for summary judgment bears the burden of

establishing that no genuine issue of material fact exists.  Id.

at 242.  Following such a showing, the burden shifts to the non-

moving party to show that there is a genuine issue of material

fact.  Id.  It is incumbent on the non-moving party to "do more

than simply show that there is some metaphysical doubt as to the

material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986).

At the summary judgment stage, the court's role is not to assess credibility or weigh evidence, but to determine whether there is a genuine issue for trial.  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. at 587 (internal quotations removed).

## IV.   THE PARTIES' POSITIONS

A.   Plaintiff's Position

Plaintiff first argues that the Debtor is collaterally estopped from re-litigating certain facts decided in the First Adversary, including: (i) that the Debtor's rent collection was wrongful; (ii) that the Debtor knew he had no legal right to the rents; (iii) that the Debtor deposited such rents into his own accounts for his and his wife's benefit; and (iv) that the Debtor has not paid Plaintiff for any wrongfully collected rents. Pl.'s Br. 18.  Plaintiff argues that federal principles of collateral estoppel apply and that all elements of the doctrine are satisfied with respect to the above-litigated facts as determined in the First Adversary.  Pl.'s Br. 17-18.

Plaintiff also asserts that all of Claim 8, as allowed by the 2008 Order, is non-dischargeable pursuant to five provisions of section 523 of the Bankruptcy Code that preclude dischargeability for debts acquired as a result of (i) misrepresentations and actual fraud; (ii) larceny; (iii)

embezzlement; (iv) fraud or defalcation while acting as a fiduciary; and (v) willful and malicious injury to another entity or its property.

In defending each of these claims, Plaintiff acknowledges that direct proof of the Debtor's wrongful intent is difficult to obtain, but argues that such intent may be inferred from the circumstances surrounding this case. Pl.'s Reply Br. 6. Plaintiff alleges that the history and record of proceedings between the parties (dating back to 1991) show that the Debtor knew that he had released any interest in the income-producing part of the Property, including the rental income, by agreeing to the Settlement. Pl.'s Reply Br. 5. Plaintiff alleges that the Debtor's assertion that he was collecting the rents pursuant to his rightful duties under the Lease is belied by the on-going litigation regarding the Property and the undisputed fact that the Debtor kept all the rents he collected.

In defending her actual fraud/misrepresentation claim, Plaintiff argues that based on the circumstances of this case and policies underlying section 523(a)(2)(A), this Court should broadly construe the requirements for actual fraud or misrepresentation to deny discharge of Claim 8. Pl.'s Br. 19-20. Specifically, Plaintiff contends that the Debtor's misrepresentations to the tenants at the Property regarding his ownership of the Property, the tenants' justifiable reliance

thereon, and Plaintiff's damages due to the Debtor's actions are sufficient for this Court to grant summary judgment on non-dischargeability under section 523(a)(2)(A).  Pl.'s Br. 20. Plaintiff makes similar arguments for non-dischargeability based on larceny, embezzlement, and willful/ malicious injury.

In asserting her fraud or defalcation claim, Plaintiff alleges that this Court should look to state law to determine if there is a trust obligation that places the Debtor in a fiduciary relationship to Plaintiff. Pl.'s Br. 23.  Plaintiff then argues that based on Delaware partnership law and the Debtor's role in the Partnership, the Debtor owed Plaintiff fiduciary duties as the successor to D. Hendry's interest in the Partnership.  Pl.'s Br. 25.  The allegedly fraudulent misrepresentations and failure to remit rents form the basis for the alleged fraud or defalcation. Pl.'s Br. 25-26.

B.   Debtor/Defendant's Position

The Debtor first argues that collateral estoppel is inapplicable to the facts determined in the First Adversary because dischargeability was not at issue in that proceeding. Def.'s Br. 12.  The Debtor then argues that summary judgment on Plaintiff's non-dischargeability claims under Bankruptcy Code sections 523(a)(2)(A) and (a)(4) is inappropriate because Plaintiff cannot meet her burden of proof, primarily with

respect to proving the Debtor's intent in collecting the rental payments. Def.'s Br. 13.

In particular, the Debtor argues that Plaintiff is not entitled to summary judgment on her section 523(a)(2)(A) actual fraud or misrepresentation claim because Plaintiff has not presented any evidence showing that (i) the Debtor knew he was obtaining funds through false representations; (ii) the Debtor intended to deceive anyone; (iii) Plaintiff, as opposed to tenants at the Property, relied on the Debtor's representations; or (iv) Plaintiff sustained any damages as a result of any reliance. Def.'s Br. 14-16.

Similarly, the Debtor argues that Plaintiff is not entitled to summary judgment on her section 523(a)(4) larceny claim because Plaintiff has not presented any evidence that the Debtor unlawfully collected the rents or intended to permanently deprive Plaintiff of her lawful property. Def.'s Br. 17. Plaintiff is also not entitled to summary judgment on her section 523(a)(4) fraud or defalcation as a fiduciary claim, argues the Debtor, because the Debtor was not a fiduciary to Plaintiff and, in any event, did not breach any fiduciary duties that may have existed. Def.'s Br. 21-22. In essence, Debtor argues that during the period when he was collecting rents from the Property, he was acting lawfully as the lessor of the Property pursuant to the terms of the Lease. As the Debtor was

simply collecting money that he believed to be his, argues
Debtor, no fraud or larceny occurred.

The Debtor also contends that summary judgment on
Plaintiff's dischargeability claims under Bankruptcy Code
sections 523(a)(4) (embezzlement) and 523(a)(6) is inappropriate
because Plaintiff failed to include such claims in the
Complaint. The Debtor provides further substantive arguments to
these claims primarily related to the Debtor's intent, in the
event that the Court does not deny summary judgment out of hand
for failure to plead.

## V.    DISCUSSION

A.    Non-Dischargeability and Collateral Estoppel

It is well-settled that a fundamental goal of the
Bankruptcy Code is to provide individuals saddled with
burdensome debt a new beginning.  The United States Supreme
Court, however, has cautioned that, "in the same breath that we
have invoked this fresh start policy, we have been careful to
explain that the Act limits the opportunity for a completely
unencumbered new beginning to the honest but unfortunate
debtor."  Grogan v. Garner, 498 U.S. 279, 286-87 (1991)
(internal quotations removed).

The limitations on a fresh start are set forth in section
523, which provides nineteen exceptions to discharge.  See 11
U.S.C. § 523.  These exceptions reflect a Congressional

determination that the continued enforceability of certain types
of debts is more important than a debtor's fresh start, or, more
bluntly, that there are some obligations that a debtor should
not be able to walk away from.  See Cohen v. de la Cruz, 523
U.S. 213, 223 (1998).  The section 523 exceptions are strictly
construed in favor of the debtor and the party asserting non-
dischargeability bears the burden to show, by a preponderance of
the evidence, that the disputed debt is not dischargeable.
Grogan v. Garner, 498 U.S. 279.

     Here, Plaintiff argues that certain of the facts related
to dischargeability were already decided by Judge Fitzgerald in
the First Adversary and that the Debtor should be collaterally
estopped from re-litigating those facts.  It is well established
that collateral estoppel may operate to bar a party from re-
litigating facts and issues in dischargeability disputes.
Grogan, 498 U.S. at 284-85; Krenowsky v. Haining (In re
Haining), 119 B.R. 460, 464 (Bankr. D. Del. 1990).  Also, the
elements of collateral estoppel are determined under federal law
when the prior judgment was rendered by a federal court.  See In
re Doctoroff, 133 F.3d 210, 214 (3d Cir. 1997).

     Under federal law, collateral estoppel is appropriate when:
(i) the issue sought to be precluded is the same as the one
involved in the prior action; (ii) the issue was actually
litigated in the prior action; (iii) the issue was determined by

14

a final and valid judgment; and (iv) the issue's determination
was essential to the prior judgment.  Id.

The Debtor does not seriously dispute Judge Fitzgerald's
findings in the First Adversary, but argues that the relevant
findings do not establish non-dischargeability. Def.'s Br. 12.
Specifically, Debtor argues that collateral estoppel is
inapplicable to the issues previously litigated in the First
Adversary because the dischargeability of Claim 8 was not at
issue in that proceeding.  Def.'s Br. 12.  This exact argument
was rejected by the Third Circuit in In re Doctoroff, 133 F.3d
at 215.

The debtor in In re Doctoroff disputed the applicability of
the doctrine of collateral estoppel to issues previously
litigated in a federal district court fraud action and argued
that dischargeability in bankruptcy was not at issue in the
prior action. Id.  The Third Circuit rejected the debtor's
argument and noted that "of course, dischargeability was not at
issue in the previous lawsuit.  That is not controlling,
however, because the plaintiffs only seek to estop [the debtor]
from asserting certain facts . . . . Collateral estoppel is
applicable if the facts established by the previous judgment . .
. meet the requirements of nondischargeability listed in 11
U.S.C. § 523 . . . ." Id.

Likewise here, Plaintiff seeks to estop the Debtor from re-litigating certain facts related to non-dischargeability established in the Prior Adversary.  Specifically, Plaintiff has alleged that the Debtor should be collaterally estopped from re-litigating the following facts: (i) that the Debtor's rent collection was wrongful; (ii) that the Debtor knew he had no legal right to the rents; (iii) that the Debtor deposited such rents into his own accounts for his and his wife's benefit; and (iv) that the Debtor has not paid Plaintiff for any wrongfully collected rents. Pl.'s Br. 18.  It is clear, under Doctoroff and Grogan, that collateral estoppel may apply here to bar re-litigation of facts or issues previously decided.

In the First Adversary, the Court allowed Plaintiff's claim against Debtor based on rents that the Debtor collected from 1996 until 2001.  The Court clearly determined in a valid and final judgment that (i) the Debtor had no right to collect the rents; (ii) the Debtor used the rents for his personal benefit; and (iii) Plaintiff had not received any of the rents.  These issues were fully briefed and argued in the First Adversary and were crucial to the Court allowing Claim 8.  The Debtor is barred from re-litigating these issues.

Plaintiff's request that the Debtor be barred from arguing that he did not know that he had no legal right to collect the rents does not fare as well.  In finding the Debtor liable for

16

return of the rents, the Court stated that, "I simply do not see how [the Debtor] can credibly claim that there was any doubt in his mind that he had any interest left in the rents." Adv. Hr'g Tr. 43.  The Court went on to state that, "[t]his action, I believe, qualifies as a non-dischargeable debt on Mr. Gordon Hendry's behalf." Adv. Hr'g Tr. 51.

Despite these disapproving statements, it is not clear that Judge Fitzgerald actually determined that the Debtor knew he had no legal right to the rents.  Nor is it evident that such a determination was essential to the allowance of Claim 8 in the 2008 Order.  Accordingly, the Court finds that the Debtor is not estopped from arguing that he believed he had a right to collect the rents.  Nevertheless, as described below, the Debtor has not met his burden under applicable summary judgment standards to show that a genuine issue of fact exists with regard to his intent.

B.   Plaintiff is Entitled to Summary Judgment on
     the Non-Dischargeability of Claim 8 Pursuant to
     Bankruptcy Code Section 523(a)(4) - Larceny

Section 523(a)(4) of the Bankruptcy Code prevents discharge of an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).  Plaintiff argues that Claim 8 cannot be discharged pursuant to each sub-part of section 523(a)(4). Plaintiff is not entitled to summary judgment under either an

17

embezzlement theory or fraud/defalcation while acting as a
fiduciary theory.  As to embezzlement, Plaintiff failed to
include an embezzlement count in her Complaint and thus
embezzlement is not properly before this Court.  As to fraud or
defalcation of a fiduciary, there are genuine issues of material
fact regarding whether the Debtor was a fiduciary to Plaintiff
and if so what duties were owed, and thus fraud or defalcation
of a fiduciary is not a proper basis for summary judgment. The
Court will, however, grant Plaintiff summary judgment on the
issue of non-dischargeability due to larceny.

Courts have recognized that "[a] fiduciary or trust
relationship is not required to find a debt nondischargeable by
an act of . . . larceny." Webber v. Giarratano (In re
Giarratano), 358 B.R. 106, 110 (D. Del. 2004) (quoting In re
Hartman, 254 B.R. 669, 674 (Bankr. E.D. Pa. 2000)).  In
determining if a debt is the product of larceny, the Court is
not bound by state law definitions of larceny, but applies
federal common law, which defines larceny as "the felonious
taking of another's personal property with intent to convert it
or deprive the owner of the same." Webber v. Giarratano (In re
Giarratano), 299 B.R. 328, 338 (Bankr. D.Del. 2003) (citing 4
Collier on Bankruptcy ¶ 523.10[2] (15th ed. Rev. 1997)).

Accordingly, to establish a claim of larceny pursuant to
section 523(a)(4), "a party must show that: 1) the debtor

18

misappropriated the subject funds for his or her own benefit;
and 2) the debtor did so with fraudulent intent." In re
Giarratano, 358 B.R. at 110.  The first element requires that
the funds come into the debtor's hands unlawfully.  In re
Giarratano, 299 B.R. at 338.  The second element, felonious
intent, has been defined as "proceeding from an evil heart or
purpose; malicious; villainous . . . Wrongful; (of an act) done
without excuse of color or right."  Elliot v. Kiesewetter (In re
Kiesewetter), 391 B.R. 740, 748 (Bankr. W.D. Pa. 2008) (quoting
Black's Law Dictionary (8th ed. 2004)).

The Court has already determined that the Debtor is barred
from asserting that he lawfully collected the rents.
Accordingly, the first element of larceny is established.  The
second element, felonious intent, requires more discussion as it
has not been established by operation of collateral estoppel and
is often difficult to prove by direct evidence.  In recognition
of this inherent difficulty, courts allow plaintiffs to "present
evidence of the surrounding circumstances from which intent may
be inferred."  Starr v. Reynolds, 193 B.R. at 201 (quoting In re
Van Horne, 823 F.2d 1285, 1287 (8th Cir. 1987)).  In addition,
when a plaintiff submits circumstantial evidence of intent to
deceive, the defendant "cannot overcome [that] inference with an
unsupported assertion of honest intent." Id.  Instead, the court
should consider whether the "[defendant/]debtor's actions appear

so inconsistent with [his] self-serving statement of intent that
the proof leads th[e] court to disbelieve the debtor." Id.
(internal quotations removed).

Here, the only evidence that the Debtor has put forth on
the issue of intent is his self-serving statement that he
believed he had an interest in the rental payments. In light of
the facts and circumstances of this case, including the on-going
litigation during the time that the rents were collected, the
Debtor must do more than make self-serving statements to survive
summary judgment.

The record before the Court contains the Debtor's
admissions that he collected all rents from September 1996 until
August 2001 and deposited them into either a PNC bank account in
the name of Dave's Shopping Center (the "DSC Account") or a
Wilmington Trust Account in the name of D.J. and G.G. Hendry
(the "Wilmington Trust Account").[3]  Pl.'s Br. Ex. A6 at 51.  The
Debtor testified at deposition that only he and potentially his
wife had the ability to draw on the DSC Account and the
Wilmington Trust Account. Pl.'s Br. Ex. A13 at 105, 111.

Debtor further testified at deposition that monies were
transferred from the DSC Account to his personal account and
that purchases for his benefit were made with funds directly

_____

[3]  The D.J. Hendry listed on the Wilmington Trust Account
was the Debtor's son, not the Debtor's father.  Pl.'s Br. Ex.
A13 at 110.

from the DSC Account. Pl.'s Br. Ex. A13 at 118-119.  Plaintiff
has presented undisputed facts that monies were transferred from
the PNC Account and the Wilmington Trust Account to the personal
accounts of the Debtor and his wife.  Pl.'s Br. Ex. A19, A20.

Additionally, the record before this Court contains no
evidence from which the Court could infer that anyone other than
the Debtor and his wife benefitted from the accounts where the
rents were deposited.  In fact, the Debtor acknowledged at
deposition that although he knew that all of the funds in the
DSC Account and the Wilmington Trust Account were not his, he
did not recall having ever paid any monies out of the accounts
to anyone else.  Pl.'s Br. Ex. A13 at 117-122.

Debtor also testified at deposition that he believed some,
but not all, of the funds in the DSC Account and the Wilmington
Trust Account were his. Pl.'s Br. Ex. A13 at 119, 121.  Based on
this statement alone, the Debtor contends that there is a
genuine issue of fact regarding his intent to misappropriate the
rental monies.

Intent however, "may properly be inferred from the totality
of the circumstances and the conduct of the person accused."
Kaye v. Rose (In re Rose), 934 F.2d 901, 904 (7th Cir. 1991).
The totality of the circumstances, as shown by the evidence
before the Court and as found in the First Adversary, is
sufficient to show that the Debtor intended to misappropriate

the rents for his own benefit.  Based on the extensive record
already developed in this case, the Debtor's self-serving
statements that he believed some of the rents were his are not
sufficient to create a genuine factual issue and summary
judgment is appropriate.

C.    Alternatively, Plaintiff is Entitled to Summary Judgment
      on the Non-Dischargeability of Claim 8 Pursuant to
      Bankruptcy Code Section 523(a)(2)(A)- False Pretenses,
      False Representation, or Actual Fraud

Section 523(a)(2)(A) of the Bankruptcy Code prevents
discharge of an individual debtor from any debt "for money,
property, services . . . to the extent obtained by – false
pretenses, a false representation, or actual fraud . . . ." 11
U.S.C. § 523(a)(2)(A).  False pretenses involve implied
misrepresentations or conduct creating and fostering a false
impression.  In re Haining, 119 B.R. at 463-64.  False
representations, on the other hand, involve express
misrepresentations.  Id.  Courts have required a showing of
"justifiable reliance and causation of loss" under either
theory.  Wymard v. Ali (In re Ali), 321 B.R. 685, 690 (Bankr.
W.D. Pa. 2005).

Additionally, many courts reviewing allegations of actual
fraud under section 523(a)(2)(A) have applied traditional common
law fraud concepts, which requires a creditor to prove that the
debtor (i) made a misrepresentation to the creditor (ii) with

22

the intent that the creditor rely upon the misrepresentation (iii) that the creditor did justifiably rely upon (iv) to the creditor's detriment.  See Field v. Mans, 516 U.S. 59, 70-71 (1995).

Other courts have recognized that fraud in this context is not limited to traditional constructs and can "consist[] of any deceit, artifice, trick or design, with mindful intent to circumvent or cheat another."  In re Haining, 119 B.R. at 463. For example, bankruptcy courts in the Third Circuit have recognized that unlike cases of actual fraud by misrepresentation, "in instances of total non-disclosure  . . . it is of course impossible to demonstrate reliance and resort must perforce be had to materiality, i.e., whether a reasonable man would attach importance to the alleged omissions in determining his course of action."  Starr v. Reynolds, 193 B.R. at 203.

The Kiesewetter case cited by Plaintiff, is particularly instructive in analyzing Plaintiff's section 523(a)(2)(A) claim. In Kiesewetter, the bankruptcy court reviewed a motion for summary judgment on the issue of non-dischargeability pursuant to section 523(a)(2)(A) of the Bankruptcy Code.  Id. at 744. The plaintiffs asserting non-dischargeability were the debtor's sisters-in-law who had successfully litigated a misappropriation claim against the debtor and her husband in federal district

23

court prior to the filing of the debtor's bankruptcy case.  _Id._
at 742-43.  The plaintiffs alleged in the dischargeability
proceeding, as they had in the federal court action, that the
debtor and her husband colluded to misappropriate family assets
from the debtor's husband's then-alive parents who had trusted
the debtor's husband to manage their assets.  _Id._  The debtor
argued that non-dischargeability pursuant to section
523(a)(2)(A) required proof of the common law elements of fraud
and that because no material misrepresentation by the debtor to
the plaintiffs was alleged, the debt was not non-dischargeable
pursuant to section 523(a)(2)(A).  _Id._ at 745.

In rejecting the debtor's arguments, the _Kiesewetter_ Court
noted that "the reach and extent of section 523(a)(2)(A) has
been stated differently by different courts." _Id._ at 746.  The
court recognized that although _Field v. Mans_, 516 U.S. 59,
appears to require justifiable reliance to find a
misrepresentation actionable under the section, "[s]ome courts
have interpreted section 523(a)(2)(A) more broadly and do not
require a specific misrepresentation to find a debt
nondischargeable under the statute."  _Id._

The _Kiesewetter_ Court relied on a Seventh Circuit case,
_McClellan v. Cantrell_, 217 F.3d 890, 892 (7th Cir. 2000), that
distinguished _Field v. Mans_ on its facts and limited its
application to instances where the fraud alleged is perpetrated

by actual misrepresentation.  Id.; McClellan v. Cantrell, 217
F.3d at 892 (noting that "[n]othing in [Field v. Mans] suggests
that misrepresentation is the only type of fraud that can give
rise to a debt that is not dischargeable under section
523(a)(2)(A).  No other type of fraud was alleged in the case or
discussed in the opinion."); See also Mellon Bank v. Vitanovich
(In re Vitanovich), 259 B.R. 873, 877 (6th Cir. B.A.P. 2001)
(adopting the Seventh Circuit's approach to actual fraud in
McClellan v. Cantrell).

In McClellan, the Seventh Circuit reviewed a bankruptcy
court's dismissal of a complaint alleging non-dischargeability
pursuant to section 523(a)(2)(A).  217 F.3d at 892.  There, the
debtor's brother had originally purchased the equipment for
$200,000 to be paid in installments.  Id.  After the brother
defaulted and a lawsuit was filed against him, he transferred
the equipment to the debtor for $10 who sold it for $160,000 and
then filed for bankruptcy.  Id.  The party that originally sold
the equipment to the debtor's brother brought a non-
dischargeability action.  Id.

Similar to the debtor in Kiesewetter, the debtor in
McClellan argued that the debt was not non-dischargeable
pursuant to section 523(a)(2)(A) for lack of a material
misrepresentation or reliance by the debtor to the creditor.
Id.  The bankruptcy court agreed and granted discharge, but the

Seventh Circuit reversed commenting that, "[n]o learned inquiry into the history of fraud is necessary to establish that it is not limited to misrepresentations and misleading omissions." Id. at 893.

Instead of interpreting section 523(a)(2)(A) to require application of the traditional elements of actual fraud, the McClellan Court looked to the purpose of the section and gave meaning to the term "actual fraud" by differentiating it from "constructive fraud." Id. at 894. The court determined that the distinction between actual and constructive fraud was relevant to analysis of non-dischargeability claims because section 523(a)(2)(A) is "intended to reach fraud in the inception of a debt - fraud that *created* the debt – whereas the law of [constructive] fraudulent conveyance is merely a method of facilitating the collection of a previous debt that need not itself have been created by a fraud." Id. The court found that fraud "is constructive if the only evidence of it is the inadequacy of consideration; it is actual if the debtor intended by the transfer to hinder his creditors." Id.

The court then determined that although the creditor had not relied on a deliberate misrepresentation, "reliance is relevant only when a fraud takes the form of a misrepresentation." Id. The court reasoned that because the debtor intended to defraud the brother's creditor, the non-

dischargeable debt arose by operation of law from her actions and was within actual fraud as contemplated by section 523(a)(2)(A).  Id. at 894-95.

This Court finds the logic of McClellan compelling.  The term "actual fraud" is not defined in the Bankruptcy Code; however, this Court is guided in its interpretation of the term by the underlying goal of section 523 – limiting the availability of an unencumbered fresh start to "honest but unfortunate" debtors.  Grogan v. Garner, 498 U.S. at 286-87. Given this fundamental policy, it is clear that a debt acquired as a direct result of a debtor's planned deceit is within the ambit of section 523(a)(2)(A), irrespective of whether the debt was incurred by conduct that meets the technical requirements of common law fraud.  To find otherwise rewards fraudsters who carry out their misdeeds through indirect, yet equally deceptive, means and does violence to the policy behind section 523(a)(2)(A).

Here, Plaintiff has alleged that the Debtor knew he was not the rightful owner of the income producing portion of the Property or entitled to the rents, and that the Debtor nonetheless represented himself as the Property owner, assumed control over all of the Property, collected the rents, and used the rents for his exclusive benefit.  Compl. ¶¶ 23-27.  The deposition testimony of the tenants at the Property and the

Debtor corroborates these allegations.  See Pl.'s Br. Ex. A7-A13.  The Debtor has admitted that he collected rents from 1996-2001 and deposited the rents into bank accounts that he used for personal purposes.  See Pl.'s Br. Ex. A6, A13.  The evidence before the Court contains a litigation history relating specifically to ownership of the Property that spans nearly twenty years.

Plaintiff has carried her burden to show that there is no genuine issue of material fact that Claim 8 was incurred as result of actual fraud or false representations.  Pursuant to Anderson v. Liberty Lobby, Inc., the burden then shifts to the Debtor to show specific facts demonstrating a genuine issue of material fact.  477 U.S. at 248.  The Debtor cannot satisfy this burden solely by offering self-serving assertions that he lacked fraudulent intent.  See In re Haining, 119 B.R. at 463 (finding that debtor's bald assertions that she lacked fraudulent intent could not alone defeat a summary judgment motion on issue of non-dischargeability pursuant to section 523(a)(2)(A)).  The Debtor has otherwise failed to provide any evidence demonstrating a genuine issue of material fact regarding fraud.

Based on the facts found in the First Adversary and the evidence before this Court, no rational trier of fact could find that the Debtor did not act with fraudulent intent in taking the rents.  The Debtor's indebtedness to Plaintiff is a direct

result of his false representations and actual fraud which satisfies the requirements of section 523(a)(2)(A). Accordingly, Plaintiff is entitled to summary judgment on her section 523(a)(2)(A) claim for non-dischargeability of Claim 8 on account of actual fraud, false representations, or false pretenses.

D.    Plaintiff is Not Entitled to Summary Judgment on Non-Dischargeability of Claim 8 Pursuant to Bankruptcy Code Section 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code prevents discharge of an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Plaintiff did not include section 523(a)(6) as a ground for non-dischargeability in the Complaint, and it is therefore, not a proper basis for summary judgment.

## VI.    CONCLUSION

Plaintiff's Motion for summary judgment as it relates to non-dischargeability pursuant to Bankruptcy Code sections 523(a)(2)(A) (Actual Fraud, False Representations, or False Pretenses) and 523(a)(4) (Larceny) will be granted. Plaintiff's Motion for summary judgment as it relates to non-dischargeability pursuant to Bankruptcy Code section 523(a)(4)(Embezzlement and Fraud or Defalcation as a Fiduciary)

and Bankruptcy Code section 523(a)(6) is denied as moot given

the Court's ruling on other grounds.

An appropriate order follows.

BY THE COURT:

_____

Brendan Linehan Shannon
United States Bankruptcy Judge

Dated:    Wilmington, Delaware
          April 9, 2010